

**SIGNED this 21st day of September, 2017**

_____
Marcia Phillips Parsons
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>    DAVID BRENT DEARMOND,<br><br>        Debtor. | No. 14-50106 MPP<br>Chapter 7 |
| MARY FOIL RUSSELL, Trustee,<br><br>    Plaintiff<br><br>vs.<br><br>PATRICIA HARPER and PATRICIA HARPER, Trustee of the Williams-Harper Family Trust,<br><br>    Defendants<br><br>        -and- | Adv. Pro. No. 16-5002 MPP |
| MARY FOIL RUSSELL, Trustee,<br><br>    Plaintiff<br><br>vs.<br><br>DAVID BRENT DEARMOND, Trustee for Hillside LLC Irrevocable Trust, and PATRICIA HARPER<br><br>    Defendants | Adv. Pro. No. 16-5003 MPP |

# **M E M O R A N D U M**

Appearances:

|  |  |
|---|---|
| Edward J. Shultz, Esq. | C.E. Bud Cunningham, Esq. |
| Post Office Box 23380 | 837 West First North Street |
| Knoxville, Tennessee 37933 | Morristown, Tennessee 37814 |
| *Attorney for Plaintiff* | *Attorney for Defendants* |

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.** In this adversary proceeding, the chapter 7 trustee Mary Foil Russell seeks to avoid as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) three transfers that the debtor David DeArmond made to or for the benefit of his soon-to-be wife Patricia Harper on the eve of their marriage, for no or inadequate consideration. A trial was held on July 20, 2017, at which the debtor, Ms. Harper, and attorney Charlie Johnson testified. Based on careful consideration of all of the evidence, the court concludes as discussed below that the debtor made the three transfers with actual fraudulent intent and that a judgment should be entered against Ms. Harper in the amount of $144,570. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H), and the parties have consented expressly to the entry of a final order by the bankruptcy judge.

I.

On January 24, 2014, the debtor filed a voluntary petition for bankruptcy relief under chapter 7.[1] In the years prior to his bankruptcy filing, the debtor had been engaged in real estate development in and around Sevier County, Tennessee, most recently through two development companies, Briartowne LLC and Hillside LLC, of which the debtor held ownership interests of 25% and 15% respectively. The debtor also owned a one-third ownership interest in Bluffs of Sevier County LLC that operated as Bluff's Bar & Grill and was the sole owner of Boyds Creek Market and Garage.

On February 7, 2012, an attorney for SmartBank notified the debtor and the three other co-owners of Briartowne LLC that Briartowne LLC was in default of the promissory note executed

---

[1] The debtor was denied a discharge by order entered January 23, 2015, based on 11 U.S.C. §§ (a)(3), (a)(4)(A), (D), and (a)(5).

2

in favor of SmartBank on July 2, 2007, in the principal amount of $715,000. Demand was made on the company and the four individuals as personal guarantors of the obligation that they bring the loan current. When payment was not forthcoming, SmartBank commenced on March 23, 2012, a collection action in the Sevier County Chancery Court against Briartowne LLC, the debtor, and the other guarantors, alleging that the principal balance due under the promissory note was $623,499.97, with accrued but unpaid interest of $25,074.91, and per diem interest of $108.25.

Less than five months later, on August 1, 2012, the debtor sold Boyds Creek Market and Garage to Ms. Harper, a former realtor, for $90,000, three days before the couple married on August 4, 2012. The debtor had paid $400,000 for the property when he purchased it seventeen months earlier. Before Ms. Harper's purchase, she had Boyds Creek Market and Garage appraised at the suggestion of her real estate attorney Charlie Johnson. On July 9, 2012, state-certified general appraiser Thomas C. Graves appraised Boyds Creek Market and Garage at an "as is" value of $150,000. When questioned why the purchase price was $90,000 rather than the appraised value, Ms. Harper testified that she bought the property as an investment for her and her son and that she thought the price was fair, since the property needed a great deal of work. The debtor testified that Ms. Harper had informed him that $90,000 was all that she could pay, and that he needed the money to pay bills, noting that he had paid more than $75,000 in one year in attorney fees in the SmartBank lawsuit. The debtor also testified that the business was sitting empty because he did not have a lessee, and stated that he was no longer interested in the business because he had purchased it for his daughter who had since passed away.

On August 3, 2012, two days after the debtor transferred his ownership of Boyds Creek Market and Garage to Ms. Harper, the debtor executed as grantor two irrevocable trust agreements prepared by attorney Charlie Johnson. Both agreements named the debtor as trustee and Ms. Harper as the primary beneficiary. In the Hillside LLC Irrevocable Trust Agreement, the debtor assigned his 15% membership interest in Hillside LLC to the trust. Similarly, in the Bluffs Irrevocable Trust Agreement, the debtor assigned to the trust his one-third membership interest in the Bluffs of Sevier County LLC. Neither trust agreement referenced any consideration for the assignments.

Both the debtor and Ms. Harper testified that the debtor's transfer of his ownership interest

3

in Hillside LLC was a wedding gift to Ms. Harper, whom he married a day later. As to the debtor's transfer of his ownership interest in Bluffs of Sevier County LLC, the testimonies of the debtor and Ms. Harper, both at trial and in their depositions, were somewhat confusing and often contradictory. At trial the debtor confirmed, consistent with the documentary evidence, that he had placed his one-third ownership interest in a trust for Ms. Harper's benefit, and testified that he conveyed his interest to a trust rather than to Ms. Harper directly so that he could maintain control. In his deposition, however, the debtor testified that he had sold his ownership interest in Bluffs of Sevier County LLC to Ms. Harper for $7,760, an amount based on one-third of the value of the equipment utilized in Bluff's Bar & Grill. Similarly, Ms. Harper testified to a purchase by her, stating in her deposition that she purchased the debtor's one-third ownership interest in Bluffs of Sevier County LLC, but testifying at trial that she purchased one-third of Bluff's Bar & Grill's contents. As evidence of payment, Ms. Harper referenced giving the debtor a cashier's check dated December 28, 2012, in the amount of $7,760, with the memo line on the check stating "one-third interest of Bluff's Bar & Grill." A purchase by Ms. Harper was also set forth in the debtor's Amended Statement of Financial Affairs filed on May 22, 2014, in which he states that he transferred his one-third interest in Bluff's Bar & Grill to his wife for $7,780 [sic], although he lists the date of the transfer as August 2012.

On December 7, 2012, the Sevier County Chancery Court entered in favor of SmartBank a joint and several judgment against the debtor and three other individual defendants in the amount of $653,737.66. Less than four months later, on March 20, 2013, the one-third ownership interest in Bluffs of Sevier County LLC originally held by the debtor was sold to the entity's two other co-owners for $68,000. The Bill of Sale, Assignment, and Settlement Statement evidencing the sale and prepared by attorney Charlie Johnson list the debtor as the trustee of the Bluffs Irrevocable Trust as the seller of the one-third interest held by the trust. The Assignment recites that the membership interest being sold was "the same membership interest that was assigned to Patricia Harper by David DeArmond effective as of June 15, 2012, and placed into The Bluffs Irrevocable Trust dated August 3, 2012." Notwithstanding this documentation, the debtor and Ms. Harper testified in their depositions that Ms. Harper was the seller and that she negotiated the sales price, consistent with the debtor's Amended Statement of Financial Affairs, which states that Ms. Harper sold her interest in Bluff's Bar & Grill in April 2013 for $68,000. At trial, however, the debtor

4

testified that he came up with the sales price and advised the two co-owners of the amount that he would be willing to take.

As for the reason for the sale, both the debtor and Ms. Harper testified that they believed the two other co-owners, who were brothers-in-law, were embezzling funds from the business and they anticipated that revenues at the company's bar and grill would soon decline due to a city vote to allow liquor by the drink, which would potentially increase competition. The debtor testified that he received the entire proceeds from the sale and used the money to pay bills. Ms. Harper denied that she received any proceeds from the sale, and when asked if the proceeds were used to pay joint bills, conceded that some could have been spent on household bills, but noted that she and the debtor kept their finances separate.

On December 14, 2013, the debtor as trustee of the Hillside LLC Irrevocable Trust sold the trust's 15% interest in Hillside LLC, and distributed the sale proceeds totaling $24,330 to Ms. Harper. After the filing of the debtor's bankruptcy case, Ms. Harper transferred ownership of the Boyds Creek Market and Garage to the Williams-Harper Family Trust, of which she is co-trustee, for no consideration.

II.

In these adversary proceedings, commenced by the chapter 7 trustee (the "Trustee") on January 23, 2016, and consolidated for trial, the Trustee asserts that the debtor's August 1, 2012 sale of Boyds Creek Market and Garage to Ms. Harper for $90,000 and his August 3, 2012 transfers of his ownership interests in Bluffs of Sevier County LLC and in Hillside LLC to the trusts for the benefit of Ms. Harper are avoidable as fraudulent transfers under § 548 of the Bankruptcy Code,[2] which provides in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (A) made such transfer or incurred such obligation with actual intent

---

[2] In addition to these three transfers, the Trustee further sought to avoid a fourth transfer: the debtor's transfer to Ms. Harper on October 17, 2013, of a promissory note made by Ron McMahon in the amount of $20,427. However, Ms. Harper's counsel announced prior to trial that the note would be turned over to the Trustee by agreed order.

5

> to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A). "To prevail on a claim for fraudulent transfer under § 548(a)(1)(A), the Trustee must prove the following elements of § 548(a)(1)(A): (1) a transfer was made of the Debtor's property; (2) the transfer was made within two years of the Petition Date; and (3) the transfer was made with actual intent to hinder, delay, or defraud the Debtor's creditors." *West v. Hsu (In re Advanced Modular Power Systems, Inc.)*, 413 B.R. 643, 673 (Bankr. S.D. Tex. 2009) (citing *Havis v. AIG Sunamerica Life Assurance Co. (In re Bossart)*, No. 06-3540, 2007 WL 4561300, at *9 (Bankr. S.D. Tex. Dec. 21, 2007, aff'd, 389 B.R. 511 S.D. Tex. 2009), aff'd 296 Fed. Appx. 398 (5th Cir. 2008)); *see also Shilling v. Heavrin (In re Triple S. Rests., Inc.)*, 422 F.3d 405, 410 (6th Cir. 2005).

The avoidance of a transfer does not automatically establish a defendant's liability for the recovery of an avoided transfer. As stated by the Sixth Circuit, "[a]lthough related conceptually, these two issues must be kept analytically separate." *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 532 (6th Cir. 2003) (citing *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003)). A defendant's liability for an avoided transfer is set forth in § 550 of the Bankruptcy Code:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). To be an initial transferee one "must have 'dominion' over the funds[,]" which at a minimum implies that the transferee has control over the asset. *In re Hurtado*, 342 F.3d at 533 (citing *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988)). To be an entity for whose benefit the transfer was made under § 550(a)(1) implies that "in transferring the avoided funds, the debtor must have been motivated by an intent to benefit the individual . . . from whom the trustee seeks to recover." *In re Connolly N. Am., LLC,* 340 B.R. 829, 833 (Bankr. E.D. Mich. 2006) (citing *Danning v. Miller (In re Bullion Reserve of North America)*, 922 F.2d 544, 547 (9th Cir. 1991)).

Although Hillside LLC Irrevocable Trust and the Williams-Harper Family Trust, through their trustees, were named as defendants in addition to Ms. Harper, the Trustee through counsel advised the court at trial that a money judgment was sought against Ms. Harper only in the amount of $144,570 for the three transfers. The Trustee broke down this amount as follows:

- $60,000 for the debtor's transfer to Ms. Harper of Boyds Creek Market and Garage, that being the difference between the $150,000 appraised value and the $90,000 that Ms. Harper paid to the debtor;
- $60,240 for the debtor's transfer of the one-third membership interest in Bluffs of Sevier County LLC, being the difference between the $7,760 that Ms. Harper paid to the debtor and the $68,000 sale price the other members later paid for the membership interest; and
- $24,330 for the debtor's transfer of his 15% membership interest in Hillside LLC, being the amount Ms. Harper received from the subsequent sale of the membership interest.

As a defense to the cause of action, Ms. Harper contends that she and the debtor acted in good faith without any fraudulent intent. She maintains that she paid fair market value for Boyds Creek Market and Garage and that the transfer of the debtor's membership interest in Hillside LLC was a wedding present. As to the transfer of the debtor's membership interest in Bluffs of Sevier County LLC, counsel for Ms. Harper argues that there is no evidence that a transfer ever took place because no documentation supports the transfer. Lastly and more generally, Ms. Harper asserts that at the time of the transfers the debtor was not insolvent and no judgment had been entered against him, such that the Trustee is unable to establish that the debtor specifically intended to defraud a creditor.

A trustee attempting to avoid an allegedly fraudulent transfer generally bears the burden of proving that the transfer was fraudulent. *In re Triple S. Rests., Inc.*, 422 F.3d at 414. As actual intent is difficult to ascertain, courts resort to a nonexclusive list of factors to consider in determining whether a transfer was fraudulent, commonly known as "badges of fraud." *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994) ("English courts . . . developed the doctrine of 'badges of fraud': proof by a creditor of certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate

7

consideration) would raise a rebuttable presumption of actual fraudulent intent."); *In re Triple S. Rests., Inc.*, 422 F.3d at 414 (citing *United States v. Isaac*, 968 F.2d 1216, No. 91-5830, 1992 WL 159795, at *4 (6th Cir. July 10, 1992) (unpublished) ("Badges of fraud are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.")).

Federal courts often recite various badges of fraud related to section 548. These include:

> (1) The lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

5 *Collier on Bankruptcy* ¶ 548.04[1][b][i] (16th ed. 2011). Also noted as a badge of fraud by the Sixth Circuit Court of Appeals is "secret or hurried transactions not in the usual mode of doing business." *See United States v. Leggett*, 292 F.2d 423, 426-27 (6th Cir. 1961).

If the presence of badges of fraud "cast suspicion on [a] transaction, the burden of proof shifts to the defendant to explain the transaction and show that it was not fraudulent." *In re Triple S Rests., Inc.*, 422 F.3d at 414 (citing *United States v. Westley*, 7 Fed. Appx. 393, 400 (6th Cir. Mar. 21, 2001)). Courts have relied on as few as one or two badges of fraud to shift the burden of proof. *See Westley*, 7 Fed. Appx. at 400 (holding that the presence of merely one badge of fraud—the fact that insiders were the beneficiaries of the transfer—was sufficient to "cast suspicion on the transaction" and shift the burden of proof to the defendants); *Green v. Stevenson (In re Stevenson)*, 69 B.R. 49, 50 (Bankr. E.D. Mo. 1986) (holding that the presence of two badges of fraud—the fact the transfer was between related parties and made without adequate consideration—gave "rise to a presumption of actual fraudulent intent"). Once the burden has shifted to the defendant, the defendant must then produce evidence that the "conveyance was fairly made and not tainted with an intent to accomplish a fraudulent purpose." *In re Triple S. Rests.*, 422 F.3d at 414 (citing *Isaac*, 1992 WL 159795, at *4).

8

III.

In this case, the evidence in its totality is compelling that the debtor's transfers of his ownership interests in Boyds Creek Market and Garage, Hillside LLC, and Bluffs of Sevier County LLC within the two years prior to his bankruptcy filing were for the purpose of hindering, delaying, or defrauding his creditors. The transfers were attended by numerous badges of fraud raising an inference of actual fraudulent intent that was not rebutted.

First, and most tellingly, the debtor made the transfers to or for the benefit of Ms. Harper on the eve of his marriage to her. Courts have regularly held that when transfers are between related parties, such relationships prompt closer scrutiny as to the presence or absence of innocent purpose. *See In re Triple S. Rests.*, 422 F.3d at 414-15; *Isaac*, 1992 WL 159795, at *4; *In re Stevenson*, 69 B.R. at 50.

Second, the debtor was experiencing financial difficulties at the time of the transfers, another badge of fraud. Although at trial the debtor characterized his financial condition in 2012 as "good," the facts belied his description. SmartBank had sued the debtor a few months before the transfer, and the debtor acknowledged that one of his reasons for selling Boyds Creek Market and Garage was because he needed money as he had spent $75,000 in attorney fees on the SmartBank lawsuit. The debtor conceded in his deposition testimony that he owed SmartBank at the time of the transfers, and his liability for the debt was confirmed by the state court's entry of a judgment against him in the amount of $653,737.66 on December 7, 2012. The debtor's net income in 2012 was only $5,973, and he had sustained a loss of $23,575 in 2011, according to his Statement of Financial Affairs. The debtor's only other income in the two years before his January 24, 2014 bankruptcy filing was from Social Security, $4,728 in 2013, and $1,182 in the first month of 2014. Moreover, at the time of his bankruptcy filing, the debtor had liabilities of $1,371,930.29 with assets of only $917,550.

A third badge of fraud is the debtor's haste in carrying out the transfers, especially the sale of Boyds Creek Market and Garage. No explanation was given for why the transfers took place when they did. The debtor testified that he had been wanting to sell Boyds Creek Market and Garage for some time, but there was no evidence that he had done anything to market the property, such as placing it with a realtor, prior to the August 1, 2012 sale to Ms. Harper. While the debtor

9

referenced the untimely death of his daughter as a reason for his decision to sell the property, the court respectfully notes that the debtor testified that his daughter died ten months to a year before the sale, more than sufficient time for the debtor to have properly marketed the property before selling it to Ms. Harper.

Fourth, the debtor continued to maintain primary control over his membership interests in Hillside LLC and Bluffs of Sevier County LLC after he transferred them to the trusts for the benefit of Ms. Harper. Both trust agreements provided that the debtor, as trustee, would "hold, manage, and invest the trust property, and shall collect and receive the income" related to the trust properties, and the debtor testified that retention of control was the reason that he had transferred his interest in Bluffs of Sevier County LLC to a trust rather than outright to Ms. Harper, thus confirming the badge of fraud. *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 218 (1941) (referring to a transfer of an asset to a corporation "so closely assimilated to the affairs of the" debtor as "mere legal paraphernalia" in which, when the debtor retains control of the asset, the "effect of the transfer is to hinder, delay[,] or defraud his creditors"); *United States v. Leggett*, 292 F.2d at 426-27 ("inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud'"); *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 (2d Cir. 1983) (stating that when the insolvent debtor remains in control of the transferred asset, this "scenario clearly indicates a scheme to defraud creditors").

Although not addressed by the parties, the court observes that the trusts' subsequent sale of the two trust properties by the debtor as trustee appears to have been contrary to the terms of the trust agreements. Although both trust instruments permitted the debtor as trustee to manage the trust property, the debtor irrevocably relinquished the right to possession or enjoyment of the trust property per the terms of the trusts and was precluded under the trusts' terms from distributing the corpus to the beneficiary, Ms. Harper, for a period of ten years, except for sums necessary in case of financial emergency. Thus, the debtor's subsequent sale and distribution of both trusts' corpuses only a few months after the trusts' creation in contravention of the trusts' terms further supports the Trustee's argument that the debtor's transfers to the trusts were shams designed to protect the debtor's assets from the reach of his creditors.

A fifth badge of fraud was the inadequate consideration paid by Ms. Harper for Boyds Creek Market and Garage as well as the apparent absence of any consideration for the debtor's transfers to the two trusts that were for Ms. Harper's benefit. The debtor purchased the Boyds Creek Market and Garage property in March 2011 for $400,000. Ms. Harper's own appraiser opined, just fifteen days prior to the debtor's transfer to Ms. Harper for $90,000, that the fair market value of the property was $150,000, and the property had been appraised for tax purposes at $176,500. While the debtor did testify that he had lost his tenant after his purchase of the property and there was testimony that the condition of the property had declined overall, the court is unable to conclude that these facts justified a sale price of only 60% of the property's appraised value, especially since the appraisal valuation took into account the property's vacant, "as is" condition. Ms. Harper also referenced the existence of underground gasoline tanks on the property, asserting that the tanks were a liability that further reduced the property's value. However, Mr. Graves noted the existence of the tanks in his written appraisal but still opined that the property was worth $150,000. And, finally, it must be noted that the debtor testified the sale price was $90,000 because "[Ms. Harper] just said that's all she could give, all she could put in it," even though the debtor acknowledged that he knew the property had appraised at $150,000. The debtor's testimony suggests that the primary determinative of the sales price was the price that Ms. Harper could afford, rather than the fair market value produced in an arms-length transaction.

As to the debtor's transfer of his one-third ownership interest in Bluffs of Sevier County LLC, the Trustee does not dispute that Ms. Harper paid the debtor $7,760 for an interest in the company's business or its contents. Because the one-third interest was sold only a few months later, on March 20, 2013, for $68,000, the court is unable to conclude that the amount paid by Ms. Harper was adequate consideration, either for an outright sale to her or for the debtor's conveyance to the trust. Counsel for Ms. Harper suggested that $68,000 did not represent the true market value of the one-third interest because the debtor and Ms. Harper believed that the co-owners were embezzling from the business. However, this belief was not conveyed to the co-owners, and there was no evidence that the co-owners inflated the purchase price to settle an embezzlement claim against them.

Regarding the debtor's transfer of his ownership interest in Hillside LLC to a trust for Ms. Harper's benefit as a wedding gift for her, it is well settled, as acknowledged by Ms. Harper's

11

counsel at trial, that love and affection do not constitute adequate consideration when considering the propriety of alleged fraudulent conveyances. *In re McFarland*, 619 F. App'x 962, 975 (11th Cir. 2015) (citing *Walker v. Treadwell (In re Treadwell)*, 699 F.2d 1050, 1051 (11th Cir. 1983)); *see also Jahner v. Jacob*, 252 N.W.2d 1, 5–6 (N.D. 1977) (citing the Uniform Fraudulent Transfer Act).

The existence of these five badges of fraud is more than sufficient to create a presumption of fraud that shifted the burden of proof to Ms. Harper to rebut the presumption. *See Westley*, 7 Fed. Appx. at 400. Ms. Harper did not meet that burden. She argues that she bought the Boyds Creek Market and Garage property in good faith and testified that after her purchase she made substantial improvements to the property that she managed. However, actual fraudulent transfer claims under § 548(a)(1)(A) "turn on the intent of the debtor in making the transfer; the state of mind of the transferee is irrelevant." *In re Bayou Grp., LLC*, 439 B.R. 284, 304 (S.D.N.Y. 2010); *see also Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.),* 337 B.R. 791, 808 (S.D.N.Y. 2005) ("Cases under § 548(a)(1)(A) indicate that it is the intent of the transferor/[debtor] and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.").

Ms. Harper also contends that the Trustee is "unable to prove that the debtor specifically intended to defraud a non-existent judgment creditor" because no judgment had actually been entered against the debtor at the time of the August 2012 transfers to Ms. Harper or for her benefit. However, the intent "to hinder, delay, or defraud" creditors "need not target any particular entity or individual as long as the intent is generally directed toward present or future creditors of the debtor." *In re Bayou Grp., LLC*, 439 B.R. at 304–05 (citing 5 Collier on Bankruptcy ¶ 548.04[1] (15th ed. rev. 2006)). Further, proof of actual harm to a creditor is not required. "Only the intent to hinder, delay or defraud need be shown; success in this regard need not be demonstrated for a transfer to constitute an actual fraudulent conveyance." *In re Bayou Grp., LLC*, 439 B.R. at 305; *Tavenner v. Smoot,* 257 F.3d 401, 407 (4th Cir. 2001) ("Nothing in § 548 indicates that a trustee must establish that a fraudulent conveyance actually harmed a creditor."); *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348 (8th Cir. 1995) ("[A]ctual harm is not required [for a viable fraudulent transfer claim]; trustee must show only that debtor acted with intent to hinder, delay, or defraud creditors."). Thus, it is irrelevant that a judgment had not yet been entered against the

12

debtor in favor of SmartBank at the time of the transfers. The pendency of SmartBank's collection action and the resulting financial pressure on the debtor were more than sufficient to create an inference that the debtor made the transfers with the intent to hinder, delay, or defraud SmartBank.

Ms. Harper further argues that the Trustee is unable to prove the debtor's insolvency at the time of the transfers. However, proof of insolvency is not an element of § 548(a)(1)(A). *See* 5 *Collier on Bankruptcy* ¶ 548.04[1][b][iii] ("[S]ection 548(a)(1)(A) does not require the trustee to show that the debtor was insolvent when the transaction occurred or that the transaction rendered the debtor insolvent."). Even so, the evidence strongly suggested that the debtor was insolvent at the time of the transfers or rendered insolvent as a result. *See* 11 U.S.C. § 101(32) (the term "insolvent" for an individual means "financial condition such that the sum of an individual's debts is greater than all of the individual's property"). As previously noted, when the debtor filed for bankruptcy relief in January 2014 he had liabilities of $1,371,930.29 and assets of only $917,550. Briartowne LLC, the only remaining business interest owned by the debtor at the time of his bankruptcy filing, had been inactive for approximately two years before the bankruptcy. Further, as discussed previously, the debtor sustained a financial loss in 2011 and had little income in 2012 and 2013. Absent evidence to the contrary, the court can only conclude that the debtor's dire financial condition at the time of his bankruptcy filing also existed in August 2012.

The last argument raised by Ms. Harper is that no documentation establishes that the debtor transferred his one-third membership interest in Bluffs of Sevier County LLC to her and that absent such documentation the Trustee is unable to prove that a transfer occurred. However, the transfer that the Trustee is seeking to avoid as to this ownership interest is not a transfer from the debtor to Ms. Harper, but the debtor's transfer to the Bluffs Irrevocable Trust for Ms. Harper's benefit, which documentary evidence established undisputedly. Moreover, to the extent relevant, there is some documentary proof of a transfer directly to Ms. Harper. The March 20, 2013 assignment executed by the debtor as trustee of the Bluffs Irrevocable Trust specifically references that the interest being sold is "the same membership interest that was assigned to Patricia Harper by David DeArmond effective as of June 15, 2012, and placed into The Bluffs Irrevocable Trust dated August 3, 2012." Further, Ms. Harper testified in her deposition, as did the debtor in his, that she had purchased the debtor's one-third interest in Bluffs of Sevier County LLC, although there was conflicting evidence as to when such a sale occurred and the extent of Ms. Harper's purchase.

13

Regardless of these discrepancies, there is no dispute that the debtor, whether by assignment to the trust on August 3, 2012, or by sale to Ms. Harper, conveyed away his entire one-third ownership interest in Bluffs of Sevier County LLC such that a transfer for bankruptcy purposes occurred. *See* 11 U.S.C. § 101(54)(D) (the term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in property"). Because this transfer was attended by the above-described badges of fraud, creating a presumption of fraud that has not been overcome, it is avoidable by the Trustee under § 548(1)(1) of the Bankruptcy Code.

IV.

The court having found that the debtor's transfers of Boyds Creek Market and Garage, his 15% interest in Hillside LLC, and his one-third interest in Bluffs of Sevier County LLC were made with the intent to hinder, delay, or defraud creditors and therefore can be avoided by the Trustee, the remaining question is the liability of Ms. Harper. Section 550(a)(1) provides that to the extent a transfer is avoided under § 548, a trustee may recover the value of the property from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." *See* 11 U.S.C. § 550(a)(1).

As the purchaser of the Boyds Creek Market and Garage, Ms. Harper was the initial transferee and is therefore liable for the transfer. *See In re Hurtado*, 342 F. 3d at 532 ("As is plain from its text, section 550(a)(1) holds initial transferees strictly liable for any fraudulent transfers they receive."). Based on the appraisal conducted fifteen days before the transfer, the fair market value of Boyds Creek Market and Garage at the time it was transferred to Ms. Harper was $150,000. Because she paid $90,000, the Trustee is entitled to recover the net difference value of $60,000 from Ms. Harper. *See, e.g., In re Positive Health Management*, 769 F.3d 899, 908 (5th Cir. 2014) ("Courts have thus netted the amounts received in a fraudulent transfer against the value given to the debtor.").

Regarding the debtor's transfer of his membership interest in Hillside LLC to the Hillside Irrevocable Trust, Ms. Harper is similarly liable. The transfer was a wedding gift to her, and she was the primary beneficiary under the trust, entitling her by its terms to the entire net income payable each quarter with the entire corpus to be distributed to her after a period of ten years.

14

Section 550(a)(1) provides that to the extent a transfer is avoided under § 548, a trustee may recover the value of the property from "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). "The phrase . . . refers to those who receive a benefit as a result of the initial transfer from the debtor—not as the result of a subsequent transfer." *In re Bullion Reserve of North America*, 922 F.2d 544, 547 (9th Cir. 1991). Courts have found that the "beneficiary of a trust may be considered a person for whose benefit a transfer into a trust is made, and may be held strictly liable under § 550(a)(1)." *In re Maestro*, 465 B.R. 576 (2011); *see also Kosmala v. Imhof* (*In re Hessco*), 295 B.R. 372, 377-78 (BAP 9th Cir. 2003) (finding that "[a]lthough . . . not the sole beneficiaries, the bankruptcy court did not err in finding the deposits to the Trust's account were made for their benefit"); *Kupetz v. United States* (*In re California Trade Technical Schools, Inc.*), 923 F.2d 641 (9th Cir. 1991) (finding that the Department of Education's status as beneficiary of a trust is what rendered it the entity for whose benefit the transfer was made); *Brown v. Philips*, 379 B.R. 765 (Bankr. N.D. Ill. 2007) (holding the nondebtor-wife, who was sole beneficiary of the trust involved in the fraudulent transfer, liable pursuant to § 550(a)(1)); *Terry v. Paxchall*, 403 B.R. 366 (Bankr. E.D. Va. 2009) (same).

The only evidence as to value of the debtor's 15% membership interest in Hillside LLC was the sales price when the trust subsequently sold the interest on December 14, 2013, for $24,330, the proceeds of which were distributed to Ms. Harper. Accordingly, the Trustee is entitled to recover $24,330 from Ms. Harper.

Lastly, as to the debtor's transfer of his one-third interest in Bluffs of Sevier County LLC to the Bluffs Irrevocable Trust, recovery is also available from Ms. Harper as she is strictly liable under § 550(a)(1) as the entity for whose benefit the transfer was made. As under the Hillside Irrevocable Trust, Ms. Harper was the primary beneficiary under the Bluffs Irrevocable Trust with the entire income payable to her each quarter and the entire corpus to be distributed to her after a period of ten years. And even if Ms. Harper purchased from the debtor his interest in Bluffs of Sevier County LLC, as their testimonies at times indicated, she is alternatively liable for the transfer under § 550(a)(1) as an initial transferee. The evidence in this case was clear that Ms. Harper was a willing participant in the debtor's efforts to hide his ownership interest in Bluffs of Sevier County LLC, whether in the trust he created for her benefit or by transfer to her.

15

Ms. Harper contends that she should not be liable for the debtor's transfer of his ownership interest in Bluffs of Sevier County LLC because she did not receive the sale proceeds when the ownership interest was subsequently sold for $68,000. However, the Trustee is not seeking to hold Ms. Harper liable as a subsequent trustee under 11 U.S.C. § 550(a)(2) but under § 550(a)(1) as the entity for whose benefit the initial transfer was made, for which she is still strictly liable.

The court concludes that the value of the debtor's one-third interest in Bluffs of Sevier County LLC at the time he transferred it to the trust on August 3, 2012, was $68,000. There was no evidence that the value of the debtor's membership interest changed during the few months between the date of the debtor's transfer and the time it was sold to the company's co-owners for $68,000 on March 20, 2013. Consequently, the Trustee is entitled to recover $60,240, as she requests, which is the difference between $68,000 and the $7,760 that Ms. Harper paid to the debtor.

V.

The foregoing constitute the court's findings of fact and conclusions of law. Accordingly, an order awarding a monetary judgment to the Trustee in the amount of $144,570 will be entered against Ms. Harper.